jms

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 03-40142-01/02-JAR |
| ) | |
| DAVID C. WITTIG and ) | |
| DOUGLAS T. LAKE, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM ORDER & OPINION GRANTING MOTION TO DETERMINE CONFLICT OF INTEREST OF J. NICK. BADGEROW**

This matter comes before the Court on the Government's motion to determine conflict of interest of J. Nick Badgerow (Doc. 404). Because the Government in essence asks the Court to disqualify Mr. Badgerow from this case, the Court will treat the Government's motion as a motion for disqualification. The motion is fully briefed and the Court is prepared to rule. For the reasons stated below, Mr. Badgerow is disqualified as counsel in this case.

**A. Factual Background**

Defendant Lake is a former officer of Westar Industries, Inc. (Westar). In this case, he is charged with conspiracy, circumvention of internal controls, wire fraud, and money laundering stemming from his tenure as an officer at Westar. Lake's first trial on these charges ended in the declaration of a mistrial on December 20, 2004. A retrial has been scheduled for May 9, 2005. Mr. Badgerow entered his appearance in this case as local counsel for Lake on March 25, 2005, and local counsel previously admitted in this case have asked to withdraw. Subsequently, the Government filed the

instant motion, seeking Mr. Badgerow's disqualification of this case on conflict of interest grounds.

Mr. Badgerow previously represented Westar on two occasions. On the first occasion, Mr. Badgerow represented Westar in a civil action against Don Barry, one of the company's outside lawyers. Westar claimed unreasonable fees and unjust enrichment, and sought a declaratory judgment. This matter was dismissed on December 30, 2002 after which an appeal was taken. Sometime in April 2003, the parties settled the case. Although Mr. Badgerow's representation of Westar did not cease until July 2003, Mr. Badgerow did not have any involvement in the negotiation of the settlement, nor any other involvement in the case after filing the Docketing Statement on appeal on February 11, 2003.

The other matter in which Mr. Badgerow represented Westar was the filing of a motion to disqualify Glenda Cafer, who represented an opposing party to Westar, before the Kansas Corporation Commission (KCC). In the KCC proceeding, Westar sought to separate its regulated utility business from its unregulated businesses. Mr. Badgerow entered his appearance as counsel of record for Westar on March 28, 2002, the same day he filed the motion to disqualify. His representation of Westar continued until January 9, 2003, when he filed a Notice of Withdrawal. While he acted as counsel of record for Westar for more than nine months, Mr. Badgerow maintains that he performed no work and had no involvement or even knowledge of the underlying issues and claims before the KCC. Rather, Mr. Badgerow only worked on the motion to disqualify.

The Government argues that Mr. Badgerow's former representation of Westar, namely the representation of Westar in the action against Don Barry and the representation of Westar before the KCC, is adverse to his current representation of Lake, such that disqualification of Mr. Badgerow from this action is necessary.

## B. Applicable Legal Standard

"Federal Courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."[1]  Within the inherent supervisory power of the court is the discretionary authority to control attorneys.[2]  Accordingly, motions to disqualify counsel are committed to the district court's sound discretion.[3]  In this district, courts give motions to disqualify serious, conscientious, and conservative treatment.[4]  The court must decide each such motion carefully and on its own facts, in an effort to balance the interest in protecting the integrity of the process against the right of a party to have counsel of his or her choice.[5]  In particular, "the decision to disqualify an attorney in a criminal case requires an evaluation of the interest of the defendant, the [G]overnment, the witness and the public in view of the circumstances of each particular case."[6]

The standards for conduct of attorneys in this Court are the Kansas Rules of Professional Conduct as adopted by the Supreme Court of Kansas.[7]  Rule 9.1(a) of the Kansas Rules of

---

[1] *United States v. Collins*, 920 F.2d 619, 627 (10th Cir. 1990) (citing *Wheat v. United States*, 468 U.S. 153, 160 (1988)).

[2] *Koch v. Koch Indus.*, 798 F. Supp. 1525, 1530 (citing *Redd v. Shell Oil Co.*, 518 F.2d 311, 314 (10th Cir. 1975)).

[3] *Id.* (citing *E.E.O.C. v. Orson H. Gugi Co.*, 749 F.2d 620, 621 (10th Cir. 1984)).

[4] *Id.* (citing *Prof. Servs. Indus. Ind. v. Kimbrell*, 785 F. Supp 676, 680 (D. Kan. 1991) (and cases cited therein)).

[5] *Regent Ins. Co. v. Ins. Co of N. Am.*, 804 F. Supp. 1387, 1390 (F. Supp. 1992) (citing *Koch*, 798 F. Supp. at 1530).

[6] *State v. Carver*, 95 P.3d 104, 113 (Kan. Ct. App. 2004) (further citation omitted).

[7] D. Kan. Rule 83.6.1.

Professional Conduct provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

Three requirements are necessary before an attorney may be disqualified: (1) the attorney whose disqualification is sought represented a former client in a matter; (2) the matter is substantially related to the matter in which the attorney now seeks to represent a new client; and (3) the new client's interest is substantially adverse to the interest of the former client.[8] The burden of proof rests with the party alleging conflict and moving for disqualification.[9]

Once the Court determines that the requirements necessary for attorney disqualification are met, an irrebuttable presumption arises that the attorney acquired confidential information in the former representation and is disqualified from representing the latter client.[10] The Court need not inquire into whether the confidential information was actually revealed or whether the attorney would be likely to use the information to the disadvantage of the former client.[11] To conduct such an inquiry would frustrate the former client's interest in the confidential information.[12]

**C. Analysis**

Lake argues that disqualification is inappropriate because the former representation of Westar

---

[8] *Chrispens v. Coastal Refining & Marketing, Inc.*, 897 P.2d 104, 113-14 (Kan. 1995).

[9] *Id.* at 114 (citing *LeaseAmerica Corp. v. Stewart*, 876 P.2d 184 (Kan. Ct. App. 1994)).

[10] *Id.*

[11] *Id.* (citing *Koch*, 798 F. Supp. at 1536) (further citation omitted).

[12] *Id.* (citing *Koch*, 798 F. Supp. at 1536) (further citation omitted).

is not substantially related to this action. In addition, Lake argues that his interests are not adverse to Westar's interests. Finally, Lake asserts that the Government lacks standing to seek disqualification of Mr. Badgerow and that any alleged conflict of interest may be cured by a waiver. The Court considers each argument in turn.

**1. Substantially Related Matters**

The primary inquiry under Rule 1.9(a) is whether the cases where the conflict has been alleged are substantially related.[13] The Kansas Supreme Court has refused to adopt a definition of "substantially related" and instead urges courts to consider motions to disqualify on a case-by-case basis.[14] The court thus evaluates the similarities between the factual bases of the two representations to determine whether a substantial relationship exists.[15] The court should not hold a hearing when dealing solely with a Rule 1.9(a) motion for disqualification; rather, the court should make the determination of whether matters are "substantially related" on the basis of the record, additional documentation provided by counsel regarding the previous representation, and arguments of counsel.[16] Doubts as to whether a substantial relationship exists should be resolved in favor of disqualification.[17]

---

[13] *Id.*

[14] *Barragree v. Tri-County Elec. Co-op., Inc.*, 950 P.2d 1351, 1361 (Kan. 1997) (noting that the Kansas Supreme Court discussed various versions of the substantial relationship test applied under Rule 1.9(a) in *Chrispens*, 897 P.2d 104, but declined to adopt any particular test); *see also* KRPC 1.9 cmt. ("The scope of the 'matter' for purposes of Rule 1.9(a) may depend on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree.").

[15] *Briggs v. Aldi, Inc.*, 218 F. Supp. 2d 1260, 1267 (D. Kan. 2002) (further citation omitted); *Chrispens*, 897 P.2d at 112 ("Each case under . . . [Rule] 9.1(a) . . . must be decided on its unique facts and application of the rule to those facts.").

[16] *Id.* (citing *Chrispens*, 897 P.2d at 115).

[17] *Koch*, 798 F. Supp. at 1537 (further citation omitted).

Even when a substantial relationship between the matters has been found to exist, the scope and the degree of representation by the attorney against whom the conflict is alleged must be considered.[18] This is so because there is reason to differentiate purposes between lawyers who become heavily involved in the facts of a particular matter and those who enter briefly on the periphery.[19] Thus, "for the automatic disqualification to take place under [Rule] 1.9(a), there must be a showing that the attorney whose disqualification is sought actually represented the former client, not just that his or her law firm did so."[20]

In this case, the government argues that Mr. Badgerow's representation of Westar in the lawsuit filed against Don Barry, as well as Mr. Badgerow's representation of Westar before the KCC are substantially related to Mr. Badgerow's representation of Lake in this case. The Court notes that Don Barry's representation of Westar was an issue in Lake's first trial. Indeed, Edward Little, counsel for Lake, inquired into Don Barry's legal fees:

> Little:  Do you remember Mr. Barry billing Westar $300 month after month for his legal services to the company?
> Terrill: His rate was $300 a month - - or I'm sorry, $300 an hour.
> Little:  Yeah. No, but 300 hours a month, not what his hourly rate was. But sometimes billing the company 300 hours in one month. Do you remember that?
> Terrill: I couldn't tell you what the hours were, I remember the rate.
> Little:  Well, you paid the bills, didn't you?
> Terrill: Yeah, I paid the bills. I can't tell you today how many hours he spent. He spent a lot of time, he did a lot of work for the company.
> Little:  Do you think its possible for a lawyer to bill 300 hours in a month to

---

[18]*Chrispens*, 897 P.2d at 115.

[19]*Id.* (citing *Silver v. Chrysler Plymouth Inc. v. Chrysler Motor Corp.*, 518 F.2d 751, 756-57 (2d Cir. 1975).

[20]*Id.*

              one client?

Terrill:  Well, I - - I guess I would have to sit down and see how many 300 hours translated into. But I know that Mr. Barry was a litigator involved in some very heavy litigation and, particularly during trial and other things, worked considerably for the company.[21]

In addition, the fact that Don Barry received a split dollar life insurance plan[22] and used the company jet were also elicited through testimony in Lake's first trial.[23] Mr. Badgerow's prior representation of Westar in its suit against Don Barry for unreasonable fees and unjust enrichment is thus identical to issues raised in Lake's first trial.

There can be no doubt that the proceedings before the KCC were central to the first trial.[24] The attempt of defendants, including Lake, to split the regulated business from the unregulated businesses was one of the major focuses of the Government's case. The KCC proceeding so crucial in the first trial is the same proceeding to which Mr. Badgerow entered his appearance on behalf of Westar. Although Mr. Badgerow insists that he has no knowledge of the underlying issues of the KCC proceeding, he did remain as counsel of record for more than nine months. Moreover, Mr. Badgerow had to know enough about the KCC proceedings to intelligently draft a motion to disqualify Glenda Cafer from those very proceedings. The Court believes that Mr. Badgerow may know more about the

---

[21]Transcript pages 5411-13.

[22]Transcript pages 673-675 (Don Barry, an outside lawyer who worked for Westar, received a split dollar life insurance policy).

[23]Transcript pages 5717-18 (Don Barry was a passenger on a jet chartered by Westar); page 5411 (Little asked "Wasn't Mr. Barry one of the worst abusers of the corporate aircraft at the company?").

[24]See Indictment ¶ 23 (S) entitled Attempt to Spit and Merge Westar for the Benefit of Wittig and Lake.

KCC proceedings as a result of his representation of Westar than he realizes. Because the KCC proceedings are part and parcel of the conspiracy charge against Lake, the Court concludes that the "substantially related" prong of the Rule 1.9(a) inquiry is met.

### 2. Substantially Adverse Interests

The Court additionally concludes that the interests of Lake and Westar are substantially adverse. Lake has been charged with conspiracy, circumvention of internal controls, wire fraud, and money laundering related to his conduct at Westar. Indeed, the Government contends that, during his tenure at Westar, Lake looted the company. Lake counters that his interests are not adverse to the Government. Mr. Badgerow's former client, however, is not the Government, but Westar. As Rule 1.9 directs "a lawyer who has formerly represented **a client** in a matter shall not thereafter . . . represent another person in the same or a substantially related matter . . . ." Thus, the Court concludes that the interests of Badgerow's former client, Westar, are adverse to the interest of his current client, Lake.

### 3. Standing

Lake additionally asserts that the Government lacks standing to seek disqualification of Mr. Badgerow. Generally, courts do not disqualify an attorney on the ground of conflict of interest unless the former client moves for disqualification.[25] "An exception exists, however, where the interests of the public are so greatly implicated that third parties . . . are found to be entitled to raise any apparent

---

[25]*Beck v. Bd. of Regents of State of Kansas*, 568 F. Supp. 1107, 1110 (D. Kan. 1983) (citation omitted); Lowe *v. Experian*, 328 F. Supp. 2d 1122, 1128 (D. Kan. 2004) (citation omitted)

conflicts of interest which may tend to undermine the validity of the proceedings.[26]  When the actions of an attorney in the eyes of the public cast even the appearance of impropriety upon the legal profession, there exists an ethical duty upon each member of the bar and upon the court itself to examine the conduct and determine if a breach of professional ethics has occurred or is about to occur.[27]  An objection by opposing counsel to another attorney on conflict of interest grounds should be viewed with caution, however, for it can be misused as a technique of harassment.[28]

*United States v. Culp*[29] is instructive.  In *Culp*, the Government moved to disqualify defense counsel on conflict of interest grounds because two government witnesses had also been represented by defense counsel in the past.[30]  The government witnesses, who had earlier pled guilty to federal drug charges, were co-conspirators in the crimes charged against the defendant.[31]  The defendant challenged the Government's standing to move for defense counsel's disqualification.[32]  In holding that the Government had standing, the court reasoned defendant's "argument that the Government lacks standing to raise the issue of a potential conflict gives short shrift to the respective interests of the

---

[26]*Id.*; *see* KRPC 1.7 cmt. ("Resolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation . . . .When the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question.")

[27]*Id.*

[28]KRPC 1.7 cmt.

[29]934 F. Supp. 394 (M.D. Fla. 1996).

[30]*Id.* at 396.

[31]*Id.*

[32]*Id.* at 397

Government and the Court in ensuring that judgments remain intact on appeal."[33] The court noted that cases of successive representation can present a conundrum for the attorney, particularly when "the lawyer's former client will testify against his current client as a witness." "To vigorously defend his former client, the lawyer must cross-examine his former client in an effort to impeach the former client's credibility." The Court concluded that "[t]he ethical canons thus present the lawyer with a Hobson's choice: the lawyer must either seek to elicit confidential information from the former client or refrain from vigorous cross-examination." Ultimately, the Court ruled that the Government had standing and disqualified defense counsel.[34]

Similarly, in this case, officers of Mr. Badgerow's former client, Westar, will likely testify against Lake. Many of these witnesses were employed by Westar when the alleged conspiracy to defraud Westar of honest services occurred. Some of these witnesses likely have knowledge of the proposed split of the regulated business from the unregulated businesses. This of course is the heart of the KCC proceeding which Mr. Badgerow entered his appearance on behalf of Westar. Testimony regarding the KCC proceeding may cause Mr. Badgerow to only then recall confidential information he learned during his representation of Westar, raising a serious conflict of interest in the midst of a trial. Westar has not provided Mr. Badgerow with a waiver, but instead strenuously objects to Mr. Badgerow's representation of Lake. In addition, the Court notes that Mr. Badgerow represented Westar in its suit against Don Barry for unreasonable fees, an issue in the first trial. Don Barry is, of course, listed as a potential Government witness in the upcoming trial.

---

[33]*Id.* at 399.

[34]*Id.* at 400.

The Court believes that Mr. Badgerow may well be faced with the very Hobson's choice identified in *Culp*: to elicit confidential information from a former client in violation of ethical rules or refrain from vigorously cross-examining those witnesses. Under these circumstances, the Court holds that the interests of the Government, Mr. Badgerow's former client, who is not a party to this case and thus unable to seek disqualification, and Court support according the Government standing to raise the issue of a potential conflict.

**4. Waiver**

Lastly, Lake contends that he can cure any conflict of interest concerns by executing a waiver. The Sixth Amendment grants a defendant the right to an attorney who is "free from conflicts of interest."[35] Nevertheless, a defendant may knowingly and intelligently waive the right to conflict-free counsel.[36] The district court should affirmatively participate in a defendant's waiver decision, conducting an independent examination of the defendant to determine if he knowingly and intelligently made the decision to continue with the conflicted counsel.[37] The district court should also determine whether the defendant understands the facts underlying the conflict and the dangers and risks associated with waiving the conflict.[38]

Even assuming a defendant validly waives a conflict, the district court is "allowed substantial

---

[35]*Wood v. Georgia*, 450 U.S. 261, 271 (1981).

[36]*See Holloway v. Arkansas*, 435 U.S. 475, 483 n. 5 (1978).

[37]*See Brady v. United States*, 397 U.S. 742, 748 (1970); *Edens v. Hannigan*, 87 F.3d 1109, 1118 (10th Cir. 1996); *United States v. Winkle*, 722 F.2d 605, 611 (10th Cir. 1983).

[38]*See Edens*, 87 F.3d at 1118; *Winkle*, 722 F.2d at 611.

latitude in refusing waivers of conflicts of interest."[39]  In exercising this discretion, the district court "must recognize a presumption in favor of [the defendant's] counsel of choice."[40]  However, the district court may refuse a waiver "not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses."[41]

This is one of those cases in which rejection of Lake's offer to enter into a waiver is appropriate.  That Lake has retained Mr. Badgerow, who had no involvement in the first trial, nor in any substantive pretrial motions, to act only as local counsel, must be considered in deciding whether to accept a waiver.  Moreover, as the Court has already discussed, a serious potential for conflict of interest looms large on the horizon.  In addition, Lake is incapable of waiving either the rights of his attorney's former clients or the interest of the Court in the integrity of its procedures and the fair and efficient administration of justice.[42]  Consequently, the Court exercises its discretion and refuses to accept Lake's offer to waive Mr. Badgerow's conflict of interest.

**IT IS THEREFORE ORDERED BY THE COURT** that Mr. Badgerow is disqualified from representing Douglas T. Lake on conflict of interest grounds pursuant to KRPC 1.9(a).

**IT IS SO ORDERED.**

Dated this  6th    day of May 2005.

---

[39] *Wheat v. United States*, 486 U.S. 153, 163 (1988).

[40] *Id.* at 164.

[41] *Id.* at 163.

[42] *See Culp*, 934 F. Supp. at 400.

                 S/ Julie A. Robinson
                 Julie A. Robinson
                 United States District Judge